UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TERRI ANN TATE and
GARDUS TATE,                                        Case No. 10-13257

          Plaintiffs,                          David M. Lawson
vs.                                                 United States District Judge

BAC HOME LOAN SERVICING, LP,                        Michael Hluchaniuk
BANK OF AMERICA, NA, FANNIE MAE,                    United States Magistrate Judge
MERS, INC., GOLDEN TITLE INSURANCE
AGENCY, INC., ROMAN HOROSZWESKI,
LAURA HOROSZWESKI,

          Defendants.
_____/

**REPORT AND RECOMMENDATION
MOTIONS TO DISMISS (Dkt. 32, 44)**

## I.     PROCEDURAL HISTORY

Plaintiff filed her complaint, initially proceeding *pro se* on August 17, 2010.

(Dkt. 1).  This matter was referred to the undersigned for all pretrial proceedings

by District Judge David M. Lawson.  (Dkt. 3).  On September 28, 2010, counsel

appeared for plaintiff in this matter.  (Dkt. 11).  Plaintiff was permitted to amend

her complaint, which was filed on December 1, 2010.  (Dkt. 25).

On December 15, 2010, defendant BAC Home Loan Servicing, LP filed a

motion to dismiss.  (Dkt. 32).  Plaintiff filed a response on January 10, 2011.  (Dkt.

35).  Defendant BAC filed a reply on January 24, 2011.  (Dkt. 36).  On February

14, 2011, defendants Bank of America (BOA), Fannie Mae, and MERS, Inc. filed a

motion to dismiss.  (Dkt. 44).[1]  Plaintiff filed a response on March 10, 2011.  (Dkt.

47).  Defendants filed a reply on March 22, 2011.  (Dkt. 48).

On June 20, 2011, the Court directed the parties to file supplemental briefs

on the effect, if any, of the recently issued decision of the Michigan Court of

Appeals, *Residential Funding Co. LLC v. Saurman*, ___ N.W.2d ___, 2011 WL

1516819 (Mich. Ct. App. April 21, 2011), on the issues in this case.  (Dkt. 52).

Defendants filed their supplemental brief on June 22, 2011.  (Dkt. 53).  Plaintiffs

filed their supplemental brief on July 1, 2011 along with a supporting exhibit on

July 2, 2011.  (Dkt. 54, 55).  Pursuant to notice, a hearing was held on July 6,

2011.  (Dkt. 51).  This matter is now ready for report and recommendation.

For the reasons set forth below, the undersigned **RECOMMENDS** that

defendants' motions to dismiss be **GRANTED**.

## II.    FACTUAL BACKGROUND

The basic factual background is undisputed.  Plaintiffs obtained two

mortgage loans on September 5, 2006 from nonparty Countrywide d/b/a America's

Wholesale Lender: an interest only, adjustable rate loan in the amount of $408,000

and home equity line of credit (HELOC) in the amount of $41,350. First Amended

---

[1]  According to the docket in this matter, defendants Golden Title Insurance
Agency, Inc., Roman Horoszweski, and Laura Horoszweski have not yet been
served with the summons and amended complaint.

Complaint, ¶¶ 31-32; *see also* Adjustable Rate Note (Dkt. 44, Ex. A); Home

Equity Credit Line Agreement And Disclosure Statement (Dkt. 44, Ex. B).  As

security for both loans, plaintiffs granted mortgages on certain real property

located at 38658 Mystic Court, Farmington Hills, Michigan to MERS (solely as

nominee for Countrywide and its successors and assigns).  First Amended

Complaint, ¶ 33.  Both mortgages were recorded in the Oakland County Register

of Deeds on October 3, 2006; the first mortgage was recorded at Liber 38198, page

789, and the HELOC mortgage was recorded at Liber 38198, Page 862.  (Dkt. 44,

Exs. C-D).  Defendant BAC is the current servicer of the loans.  First Amended

Complaint, ¶ 34.  Fannie Mae is the current owner of the loans.  *Id*. at ¶ 33.  On

November 17, 2009, MERS assigned all of its interest in the First Mortgage to

BAC by an assignment of Mortgage recorded on December 28, 2009, in Liber

41725, Page 881 in the Oakland County Register of Deeds.  *Id*. at ¶ 37; (*see also*

Dkt. 44, Ex. E).

Apparently unable to make the loan payments as they became due, plaintiffs

defaulted on the loan.  BAC commenced foreclosure proceedings, and was the

successful bidder at the foreclosure sale held on April 6, 2010.  First Amended

Complaint, ¶ 43; (*see also* Dkt. 44, Ex. F).  On May 4, 2010, BAC transferred all

of its interest in the property by quitclaim deed to Fannie Mae.  (Dkt. 44, Ex. G).

The redemption period expired on October 6, 2010.  *Id*.  Rather than redeem the

property, plaintiffs filed this action on August 17, 2010.

## III.   ANALYSIS AND CONCLUSIONS

### A.   Standard of Review

The Supreme Court recently raised the bar for pleading requirements beyond the old "no-set-of-facts" standard of *Conley v. Gibson*, 355 U.S. 41, 78 (1957), that had prevailed for the last few decades. *Courie v. Alcoa Wheel & Forged Products*, 577 F.3d 625, 2009 WL 2497928, *2 (6th Cir. 2009), citing, *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009); *see also Twombly*, 550 U.S. at 555.  In *Iqbal*, the Supreme Court explained that a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949.  The Sixth Circuit observed that this new standard is designed to screen out cases that, while not utterly impossible, are "implausible." *Courie*, at *2.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949.  And although the Court must accept all well-pleaded factual allegations in the complaint as true, it need not "'accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555, quoting, *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see also Iqbal*, 129 S.Ct. at 1949. The Sixth Circuit noted that "[e]xactly how implausible is 'implausible' remains to

be seen, as such a malleable standard will have to be worked out in practice."
*Courie*, *2.

   "[C]ourts must consider the complaint in its entirety, as well as other sources
courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in
particular, documents incorporated into the complaint by reference, and matters of
which a court may take judicial notice."  *See Tellabs, Inc. v. Makor Issues &
Rights, Ltd.*, 551 U.S. 308, 322 (2007).  Thus, it is permissible to consider, in the
context of a motion to dismiss, documents such as those relating to the mortgage
transaction, assignment, and foreclosure because they are referenced in plaintiffs'
amended complaint and are central to their claims.  *Allen v. International Truck &
Engine Corp.*, 2010 WL 749655, *2 (S.D. Ohio 2010); *see also Havenick v.
Network Exp., Inc.*, 981 F.Supp 480 (E.D. Mich. 1997) ("the Court may properly
consider, for the purposes of a Motion under Fed.R.Civ.P. 12(b)(6), the entirety of
documents which Plaintiffs rely upon and quote in their Complaint without
transforming the Motion into one for Summary Judgment.") *Greenberg v. Life
Insurance Co. of Va.*, 177 F.3d 507, 514 (6th Cir. 1999) (when "a document is
referred to in the complaint and is central to the plaintiff's claim ..., the defendant
may submit an authentic copy to the court to be considered on a motion to
dismiss."); *Crofton v. Bank of America Home Loans*, 2011 WL 1298747) (A court
may also consider "matters of public record," such as documents recorded with the

Register of Deeds when considering a motion to dismiss under Rule 12(b)(6));

*Bundy v. Federal Nat. Mortg. Ass'n.*, 2011 WL 977531, *2 (Given that the "the

loan applications, mortgages, and notes attached to defendants' motion" were

referred to in the complaint and were central to plaintiff's claims, they "are

considered part of the pleadings, and the Court's consideration of these documents

does not convert a motion to dismiss into one for summary judgment.").

    B.   <u>Quiet Title Claim</u>

Defendant BOA argues that it is not the originating lender, servicer,

mortgagee or owner of the loans and mortgages at issue and thus, this claim as

asserted against it, must fail.  Before plaintiffs filed this action, MERS assigned all

of its interest in the First Mortgage to BAC.  First Amended Complaint ¶ 37, Ex. E.

According to defendant MERS, on expiration of the redemption period, its interest

in the property, as mortgagee of the HELOC Mortgage, was extinguished.

Accordingly, neither BOA nor MERS have any interest in the property and are

claiming no interest in the Property.  Because there is no title dispute between

BOA, MERS and plaintiffs, defendants argue that the quiet title claim should be

dismissed as against BOA and MERS with prejudice.

Defendants also argue that plaintiffs have failed to plead a quiet title claim

properly under Michigan law.  Mich. Comp. Laws § 600.2932 provides:

      Any person, whether he is in possession of the land in

> question or not, who claims any right in, title to,
> equitable title to, interest in, or right to possession of
> land, may bring an action in the circuit courts against any
> other person who claims or might claim any interest
> inconsistent with the interest claimed by the plaintiff,
> whether the defendant is in possession of the land or not.

Defendants also point to the requirements of Michigan Court Rule 3.411, which

applies to actions to determine interests in land under § 600.2932.  Under Rule

3.411(B)(2), a plaintiff must allege:

> (a) the interest the plaintiff claims in the premises;
> (b) the interest the defendant claims in the premises; and
> (c) the facts establishing the superiority of the plaintiff's
> claim.

Rule 3.411(C)(2) requires plaintiffs to attach to their complaint, "a statement of the

title on which the pleader relies, showing from whom the title was obtained and the

page and book where it appears of record."  According to defendants, plaintiff

Terri Ann Tate has not attached a copy of the recorded mortgage that is the basis of

her quiet title claim, as required by MCR 3.411(C)(2) and, more importantly, she

does not dispute that she obtained the loans and granted a mortgage as security.

Further, plaintiff Gardus Tate does not allege that he has any interest in the

property whatsoever.  Thus, defendants argue, neither plaintiff has properly stated

a claim to quiet title and this claim should be dismissed.

In response, plaintiffs claim that they have stated a quiet title claim because

their signatures on the mortgage agreement are undated along with the signature of

the notary public, contrary to Mich. Comp. Laws § 565.8.  Plaintiffs also assert that the assignment from MERS to BAC dated November 17, 2009, was signed by "March J. Ford," a lawyer with Trott & Trott, but below her signature it states that she is Marcy J. Ford, Vice President for MERS pursuant to an agreement for signing authority dated May 19, 2009.  Defendants have not offered any evidence of this "signing authority."  Plaintiffs also point out that the assignment was notarized by Terri Scheidel whose commission expires March 10, 2016 of Michigan; however, Ms. Scheidel was not found in the Michigan Department of State Notary Search Database.  For these reasons, plaintiffs assert that they have stated a proper claim to quiet title.

In reply, defendants point out that the mortgage clearly bears the notary's averment that plaintiffs' signatures were sworn before the notary on September 5, 2006, the same date that plaintiffs concede executing the mortgage.  Accordingly, the defendants assert that the requirements of § 565.8 have been satisfied. Defendants also point out that plaintiffs have not identified any legal requirement that plaintiffs' signatures on the mortgage bear a date in addition to that which appears at the top of the mortgage.  Defendants also argue that plaintiffs' assertion that the Assignment of Mortgage was not executed by a proper notary is meritless and disingenuous because when Ms. Scheidel's name is entered into the Michigan Department of State Notary Search Database, the site clearly indicates that Ms.

Report and Recommendation
Motions to Dismiss
*Tate v. BAC Home Loan Servicing*; Case No. 10-13257

Scheidel changed her last name to Dornbrush on December 29, 2009.  (Dkt. 36, Ex. A).  Defendants also point out that plaintiff cites no authority for the proposition that defendants must provide evidence of "signing authority" from MERS and BAC.  And, in any event, according to defendants, because plaintiffs are not parties to the assignment, they have no standing to challenge it.  Thus, defendants argue that plaintiffs' quiet title claim should be dismissed.

In the view of the undersigned, plaintiffs have failed to state a claim to quiet title.  The alleged defects they identify in their amended complaint regarding the signatures are without merit given that the face of the mortgage document, as identified in their amended complaint, contains their signatures on a dated document and what appears to be a properly dated, signed, and sworn notarization.  (Dkt. 35-2, Pg ID 610-611).

The undersigned also agrees with defendants that plaintiffs have simply failed to identify any legal authority to support their theory that without evidence of "signing authority," the assignment is somehow invalid.  In addition, even if there were any irregularities, plaintiffs, as non-parties to the assignment, lack standing to proffer any challenge. *See Livonia Props. v. 12840-12976 Farmington Road Holdings, LLC*, 2010 WL 4275305, *4 (6th Cir. 2010) (citation and internal quotation marks omitted) ("[T]here is ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that

assignment."); *Jarbo v. BAC Home Loan Serv.*, 2010 WL 5173825 (E.D. Mich.

2010) (rejecting borrower's claim that defective assignment destroys record chain

of title and divests mortgage holder of standing to foreclose).  As District Judge

Cook recently explained:

> In *Livonia*, the borrower challenged the validity of a
> mortgage assignment where the assignee was not even in
> existence as of the date of the transfer. The assignee, in
> turn, had assigned the mortgage to the foreclosing party.
> The court rejected the borrower's challenge to the
> foreclosing party's chain of title on two independent
> grounds; namely, (1) the invalidation of the interim
> assignment would not destroy the record chain of title
> because the public record would remain unchanged; and
> (2) even if the assignment was flawed, the borrower, as a
> nonparty to the assignment, lacked standing to raise that
> defect as a challenge to the foreclosing party's chain of
> title. *Id*. Because the foreclosing party had shown that it
> was the owner of the indebtedness-and thus the borrower
> was not at risk of double liability on the loan-any
> irregularities in the assignments by which that party
> obtained the note were irrelevant with respect to the
> borrower's rights and responsibilities related to the
> mortgage. *Id*. Here, as in *Livonia*, the [plaintiffs] were
> not parties to the challenged assignment. Furthermore, its
> validity or invalidity would not have any effect on the
> public record. Thus, they lack standing to challenge the
> purportedly improper or invalid assignment.

*Stein v. U.S. Bancorp*, 2011 WL 740537, *11 (E.D. Mich. 2011).  Just as in *Stein*,

plaintiffs have not alleged any defects in the assignment such that it would give

them standing to challenge it or provide the basis for a quiet title action.  Thus,

there is no legal basis for the quiet title action and it should be dismissed.

C.    <u>Wrongful Foreclosure</u>

Defendants argue that BOA, Fannie Mae, and MERS are entitled to dismissal of this claim because they did not foreclose the mortgage, as recognized by plaintiffs' admission in the amended complaint that "Defendant BAC foreclosed the loan." *Id*. at ¶ 54. Defendants also argue that plaintiffs' claim for wrongful foreclosure also must fail because they assert various violations of the Uniform Commercial Code, which does not apply to real estate transactions. And, defendants also point out that foreclosures by advertisement are governed by specific state statutory provisions, which plaintiffs have not claimed were violated.

In response, plaintiffs argue that the assignment was not properly recorded and defendants have not provided evidence of a validly executed deed or assignment. Thus, according to plaintiff, defendants did not comply with § 600.3204, the statute governing foreclosure by advertisement. Plaintiffs also argue that "special deputy sheriff" and not "deputy sheriff" conducted the sale and this invalidates the foreclosure under Mich. Comp. Laws § 600.3216.

In reply, defendants assert that plaintiffs' claim that the "Assignment of Mortgage was not properly recorded is dumbfounding, since plaintiffs attach a copy of the recorded mortgage as Exhibit B (mislabeled as Exhibit F) to their Response." Moreover, defendants argue, again, that plaintiffs' identify no legally significant defect with respect to the assignment. Finally, defendants assert that

plaintiffs' amended complaint and response fails to identify any defect in the appointment of the special deputy who conducted the foreclosure sale. Thus, this argument fails as well.

The law is clear that Article 9 of the Michigan Uniform Commercial Code applies only to sales of personal property and does not apply to sales of foreclosed property. *Munson v. Countywide Home Loans, Inc.*, 2008 WL 538866, *10 (E.D. Mich. 2008); *Shirley v. NationStar Mortgage*, 2011 WL 1196787, *2 ("[T]he UCC applies to personal property, not real property."), citing, *Schmidt v. National City Corp.*, 2008 WL 5248706, *10 (E.D. Tenn. 2008). Thus, plaintiffs' claims under the Michigan UCC fail as a matter of law and should be dismissed. In addition, plaintiffs again identify no legal authority to support the claim that the assignment, as identified in the amended complaint, was defective or not properly recorded. (Dkt. 35-3, Pg ID 613); *see also Stein*, *supra.*

As a properly deputized special deputy (which plaintiff does not dispute), the special deputy sheriff was authorized to conduct the sale on the property. *See e.g.*, *Drew v. Kemp-Brooks*, 2011 WL 2936103, *6 (E.D. Mich. 2011). Michigan law allows for the creation of special deputies who may be deputized for the purposes of performing particular acts. Michigan Compiled Laws § 51.70 provides that "[p]ersons may also be deputized by a sheriff, by an instrument in writing, to do particular acts, who shall be known as special deputies ...." Mich. Comp. Laws

§ 51.70.  In other words, § 51.70 specifically allows a sheriff to appoint special

deputies to perform any particular acts that the Sheriff himself is authorized by law

to perform.  *Drew*, at * 6, citing, *Tower v. Welker*, 93 Mich. 332, 335; 53 N.W. 527

(1892) (finding that Michigan law allows sheriffs to appoint deputies and

undersheriffs who, once appointed, have all of the ministerial powers of a sheriff:

"In general, all ministerial duties which the principal himself has a right to perform

may be discharged by a deputy.").  Moreover, the Michigan Court of Appeals has

recently held that a special deputy appointed under § 51.70 can perform

foreclosure sales.  *Kubicki v. Mortgage Electronic Registration Sys.*, ___

Mich.App. ___, 2011 WL 668118 (2011); *see also English v. Flagstar Bank*, 2009

WL 4730450, *2 (E.D. Mich. 2009) (holding special deputy's appointment by

undersheriff valid).  As such, plaintiff's claim that the sale was invalid because of

the special deputy sheriff's role fails to state a claim.

    D.    <u>Slander of Title</u>

    The elements of slander of title under the common law are well-settled: (a) a

false statement of the defendant affecting the plaintiffs' right in the property; (b)

malice; and (c) special damages.  *B&B Investment Group v. Gitler*, 229 Mich. App.

1, 8 (1998); *Harrison v. Howe*, 109 Mich. 476, 478-479 (1896); *Glieberman v.

Fine*, 248 Mich. 8, 12 (1929).  According to defendants, plaintiffs do not allege

that BAC and Fannie Mae made any false statements affecting plaintiffs' rights in

any property.  Rather, plaintiffs rely on the fact that BAC and Fannie Mae are "not mentioned anywhere on the mortgage documents,... yet held [themselves] out as the holder[s] of the mortgage."  First Amended Complaint, ¶¶ 69-70.  Defendants point out that ¶ 20 of the executed and recorded mortgage expressly provides that the note could be sold, and that such sale could result in a change in plaintiffs' loan servicer.  (Dkt. 32, Ex. C).  Defendants argue that plaintiffs fail to cite to any authority requiring that the loan servicer be identified in a mortgage and further point out that the mortgage makes clear that plaintiffs' loan could be serviced by a number of servicers over the life of the loan.  Finally, defendants argue that plaintiffs do not dispute that they received the loans here, nor do they dispute that they executed the mortgages which provide security for those loans and thus, the claim for slander of title is frivolous and should be dismissed.

In response, plaintiffs assert that defendant MERS wrongfully assigned plaintiffs' mortgage to defendant BAC.  According to plaintiffs, defendant MERS was named as nominee for the lender, Countrywide Home Loans; however, defendant Fannie Mae is listed as the investor in plaintiffs' mortgage.  According to plaintiffs, there is no evidence that defendant MERS was authorized to act on any other entity's authority.  Thus, plaintiffs posit, defendant MERS did not possess the power to assign the mortgage to defendant BAC.  Moreover, plaintiffs argue that the assignment appears to be fraudulent because neither the assignor,

Report and Recommendation
Motions to Dismiss
*Tate v. BAC Home Loan Servicing*; Case No. 10-13257

V.P. Marcy Ford, nor the notary, Terri Scheidel appear to be valid authorized parties in this transaction and "[k]nowingly recording this invalid deed satisfies the elements of slander of title."  (Dkt. 35).

In reply, defendants argue that the mortgage was properly assigned from MERS to BAC.  Defendants also point out that the authority of MERS to act on behalf of other entities arises from the face of the mortgage plaintiffs' executed:

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

(Dkt. 35, Ex. A, Pg ID 603).  Thus, defendants assert that plaintiffs' slander of title claim should be dismissed because the assignment of mortgage was validly and properly executed and BAC did not "knowingly record[] [an] invalid deed."

Again, plaintiffs have not alleged any defects in the assignment such that it would give them standing to challenge it or provide the basis for slander of title claim.  *See Stein*, *supra*.  And, as explained above, there is no basis to conclude that the notarization was improper or invalid.  Based on the foregoing, there is no legal basis for the slander of title claim and it should be dismissed.

E.    Fraud

Defendants argue that plaintiffs failed to plead their fraud claim with particularly as required by Federal Rule of Civil Procedure 9(b).  Here, the complaint alleges fraud by "Defendants" in "induc[ing Plaintiffs to enter into a mortgage transaction which was contrary to Plaintiffs' interests, and contrary to the preservation of their home."  First Amended Complaint, ¶ 74.  Defendants first point out that they did not lend plaintiffs money.  Accordingly, these defendants could not have made any representations to plaintiffs with respect to the lending of money.  Defendants also point out that even if the lender did make misrepresentations to plaintiffs, plaintiffs could not have reasonably relied on them because the notes and mortgages plaintiffs executed clearly set forth the terms of the mortgage loans.

In their responsive briefs, plaintiffs do not address the alleged defects in their amended complaint as identified by defendants in their motions to dismiss. Thus, the undersigned finds that these claims have been abandoned.  *Kashat v. Paramount Bancorp, Inc.*, 2010 WL 538295, *2 (E.D. Mich. 2010) (The plaintiffs' response to the defendants' motion to dismiss did not address the wrongful foreclosure count of the complaint and accordingly, the claim was deemed abandoned).  The undersigned further concludes that plaintiff's amended complaint is woefully inadequate under Rule 9(b) and should be dismissed on this basis as well.

F.     Breach of Fiduciary Duty

Defendants argue that plaintiffs' fiduciary duty claims fail because there is no fiduciary relationship between them and plaintiffs. To establish a fiduciary relationship, one must repose faith, confidence, and trust in the fiduciary and rely on the judgment and advice of the fiduciary. *Ulrich v. Federal Land Bank of St. Paul*, 192 Mich. App. 194, 196 (1991); *Farm Credit Services v. Weldon*, 232 Mich. App. 662, 680-681 (1998). Relief is granted when such confidence has been reposed and betrayed. *Id*. Here, defendants did not make the loan to plaintiffs. However, even if it had done so, the relationship between a borrower and a lender will generally not establish a fiduciary relationship. *Id*. Accordingly, defendants assert that plaintiffs' fiduciary duty claim should be dismissed.

Plaintiffs argue that they made a valid breach of fiduciary duty claim against defendants and cite the following authority: "An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account. The test of whether an agency has been created is whether the principal has a right to control the actions of the agent." *Meretta v. Peach*, 491 N.W.2d 278, 280 (1992) (citations omitted). Plaintiffs go on to state that they have offered evidence to raise a genuine issue of material fact with respect to whether an agency relationship existed between defendants and as such, this claim should not be dismissed.

In reply, defendants point out that, other than an excerpt setting forth the general conditions under which an agency relationship may arise, plaintiffs offer no case law to refute that cited by defendants that the relationship between a servicer (or lender) and a borrower generally does not establish a fiduciary relationship.  According to defendants, plaintiffs' conclusory and self-serving statements hardly state a claim for breach of fiduciary duty, and this claim should be dismissed.  The undersigned agrees with defendants.  Plaintiffs have utterly failed to identify any factual or legal basis for a breach of fiduciary duty claim against these defendants and this claim should be dismissed.

      G.      <u>Home Ownership Equity Protection Act (HOEPA) and Truth In Lending Act (TILA)</u>

Plaintiffs allege that defendants violated HOEPA and TILA.  HOEPA is an amendment to the TILA and as such, a claim for damages under HOEPA, like a claim for damages under TILA, is governed by the same limitations period, which is one year from the date of the loan transaction for a damages claim and three years for a rescission claim.  *Printy v. JP Morgan Chase*, 2011 WL 1103473, *4 (E.D. Mich. 2011).  Plaintiffs executed the notes and mortgages in September 2006, and filed this action four years later in August 2010.   Thus, defendants argue that plaintiffs' HOEPA and TILA claims are clearly time-barred.

Plaintiffs argue that this case is similar to Jones v. Trans Ohio Savings

Association in which the Sixth Circuit held that a plaintiff's complaint would survive a motion to dismiss when she "alleged knowing and fraudulent concealment of the variable interest rate provision and of the mortgage note itself." *Jones v. TransOhio Savings Ass'n*, 747 F.2d 1037, 1041 (6th Cir. 1984). According to plaintiffs, they did not discover the violations until defendants began foreclosure proceedings.  Plaintiffs also argue that they are not required to rebut a motion to dismiss, or to present evidence, but instead must only plead facts which establish a claim for relief.  *Osborne v. Bank of Am., Nat'l Ass'n*, 234 F. Supp.2d 804, 807 (M.D. Tenn. 2002).

In reply, defendants argue that plaintiffs do not bother to identify what affirmative steps defendants allegedly took to conceal the alleged unidentified violations of HOEPA and TILA, and (2) that plaintiffs could not have discovered the alleged violations despite exercising due diligence.  According to defendants, while plaintiffs allege that they are not required to rebut BAC's Motion to Dismiss but "instead must only plead facts which establish a claim for relief," plaintiffs have failed to do even that.  Defendants urge the Court to conclude that plaintiffs' HOEPA and TILA claims are barred by the applicable statutes of limitations, and plaintiffs have pled no facts at all warranting that their belated claims be save by the doctrine of equitable tolling.

The undersigned agrees with defendants.  A TILA claim for rescission

brought more than three years after consummation of the loan transaction is time-barred.  *See Beach v. Ocwen Federal Bank*, 523 U.S. 410 (1998) (A mortgagor cannot assert right to rescind as recoupment defense in foreclosure action brought by mortgagee more than three years after consummation of loan transaction); *See also Campbell v. Deutsche Bank Nat. Trust Co.*, 2011 WL 2533577, *4 (E.D. Mich. 2011).  To the extent that plaintiff asserts a claim for damages under TILA or HOEPA, these claims too are time-barred under TILA's one-year statute of limitations.  *See* 15 U.S.C. § 1640(e) ("[a]ny action under this section may be brought in any United States district court, or in any other court of competent jurisdiction within one year from the date of the occurrence of the violation.").

The undersigned also rejects plaintiffs' claim that equitable tolling applies and that this is not a matter to be decided in the context of a motion to dismiss. Unlike the complaint at issue in *Jones v. TransOhio* on which plaintiffs rely, nothing in the plaintiffs' amended complaint supports a claim for equitable tolling. Plaintiffs allege no facts to support their belated claim of fraudulent concealment. Thus, plaintiffs' TILA and HOEPA claims are properly dismissed based on defendants' motions to dismiss because they plainly are barred by the statute of limitations and equitable has not been adequately alleged.  *See e.g.*, *Harvey v. Ameriquest Mortgage Co.*, 2010 WL 4386976 (E.D. Mich. 2010) (The plaintiff failed to set forth facts in her response briefs or complaint to find fraudulent

concealment and the court concluded that the limitations periods are not equitably tolled and dismissed the claims on a motion to dismiss); *Printy v. JP Morgan Chase*, 2011 WL 1103473 (E.D. Mich. 2011) (Where the plaintiff failed to allege in the complaint conduct showing affirmative acts by the defendant to conceal the material terms of the plaintiff's loans or that, by the plaintiff's due diligence, he was unable to discover the HOEPA or TILA violations within the applicable limitations period, dismissal for failure to state a claim was appropriate.)

H.   Michigan Consumer Protection Act (MCPA)

In their first amended complaint, plaintiffs generally alleged that "Defendants" violated the MCPA, Mich. Comp. Laws § 445.901 *et seq.*, by: (1) "placing Plaintiffs into a mortgage that was contrary to Plaintiffs staying in their home;" (2) "placing Plaintiffs into a mortgage that was clearly not in the best interests of Plaintiffs;" and (3) "failing to make reasonable inquiry into Plaintiffs' actual ability to repay this debt." First Amended Complaint, ¶ 89. According to defendants, plaintiffs' claim should be dismissed for two reasons. First, BOA, Fannie Mae and MERS did not originate the loans at issue. Second, the MCPA does not apply to transactions or conduct "specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States." Mich. Comp. Laws § 445.904. Here, according to defendants, the servicing of the mortgage loan is specifically authorized by state

and federal laws.  *See Morris v. HomeEq Servicing Corporation*, 2010 WL 537745, *5 (Mich. App. 2005) ("Likewise, because defendant is a mortgage loan servicer that is specifically authorized under the Mortgage Brokers, Lenders, and Servicers Licensing Act * * * to engage in mortgage loan transactions, subject to the supervisory authority and control of the Commissioner of the Office of Financial and Insurance Services * * * we find that defendant is exempt from the provisions of the MCPA.").  Because defendant BAC is exempt from the MCPA, this claim should be dismissed with prejudice.

Plaintiffs do not address this claim in the responses to the motion to dismiss. For this reason, the undersigned concludes that this claim has been abandoned and should be dismissed.  *See Kashat*, *supra*.

J.   Conspiracy

Under the heading in the First Amended Complaint titled "Joint Venture," plaintiffs allege that the defendants "were engaged in a joint venture amongst themselves and with unknown third parties." First Amended Complaint, ¶ 22.  To the extent plaintiffs attempt to allege a conspiracy claim, defendants argue that  this claim should be dismissed.  "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Admiral Ins Co. v Columbia Cas Ins Co*, 194 Mich.App. 300, 313 (1992).  Plaintiffs must

allege a separate, actionable tort, or the conspiracy claim will fail. *Id*.  Defendants argue that dismissal is warranted because, except in the most conclusory manner, plaintiffs have failed to allege that defendants acted together with any other party to accomplish a criminal or unlawful purpose or to accomplish a lawful purpose by criminal or unlawful means.  Rather, the complaint merely refers to a "joint venture" amongst defendants that plaintiffs claim has allegedly spanned five years, but does not allege a separate, actionable tort.  To the extent plaintiffs' conspiracy claim is predicated on plaintiffs' attempted fraud, wrongful foreclosure, or slander of title claims, defendants argue that the conspiracy claim must fail because those claims also fail as a matter of law.  According to plaintiffs, a reasonable inference has been established that defendants knew that the assignment was not valid; yet it was recorded nonetheless and then sold to defendants Roman G. Horoszewski and Laura Horoszewski.

In the view of the undersigned, plaintiffs' complaint for conspiracy is woefully inadequate for the precise reasons articulated by defendants and should be dismissed.

K.      Usury

Plaintiffs allege that a "usurious interest rate" was among the defects on the face of the mortgage documents at issue in this case.  First Amended Complaint, ¶ 66.  To the extent plaintiffs attempt to state a usury claim, defendants argue that the claim should be dismissed because it is undisputed that defendants did not lend plaintiffs money.  In addition, defendants point out that Mich. Comp. Laws § 438.31c provides certain restrictions on the amount of interest that may be charged on a loan secured by a mortgage.  Thus, according to defendants, this claim should be dismissed because plaintiffs fail to allege that the interest of their loans exceeded the rate authorized under § 438.31c.

Plaintiffs do not address this claim in the responses to the motion to dismiss. For this reason, the undersigned concludes that this claim has been abandoned and should be dismissed.  *See Kashat*, *supra*.

L.      Effect of *Residential Funding Co. LLC v. Saurman*

In *Saurman*, the Michigan Court of Appeals held "that MERS does not meet the requirements of MCL 600.3204(1)(d) and, therefore, may not foreclose by advertisement."  *Residential Funding Co. LLC v. Saurman*, 2011 WL 1516819, *1. The basic facts were as follows:  The borrowers executed promissory notes in favor of the lender, which notes were secured by mortgages under which MERS was the mortgagee, as nominee for the lender and its successors and assigns.  *See*

*id.* The lender subsequently assigned the promissory notes to successor lenders and, after the borrowers' defaulted on their respective loans, MERS foreclosed the respective mortgages by advertisement, pursuant to § 600.3201, *et seq.*  MERS was the successful bidder and purchased the mortgaged properties at foreclosure sale. *See id.* at 1-2.  MERS, as the grantee under the sheriff's deeds, "then quit-claimed the property to . . . [the] respective successor lenders."  *Id.* at 2.

Under § 600.3204(1)(d), only "the owner of the indebtedness or of an interest in the indebtedness secured by the mortgage or the servicing agent of the mortgage" may foreclose by advertisement.  *Id.* at 3.  "The parties agree[d] that MERS was neither the owner of the indebtedness, nor the servicing agent of the mortgage." *Id.* The court analyzed whether MERS could foreclose as the owner "of an interest in the indebtedness" and concluded that it could not:

> Pursuant to the mortgages, defendants were the mortgagors and MERS was the mortgagee. However, it was the plaintiff lenders that lent defendants money pursuant to the terms of the notes.  MERS, as mortgagee, only held an interest in the *property* as security for the note, not an interest in the note itself. MERS could not attempt to enforce the notes nor could it obtain any payment on the loans on its own behalf or on behalf of the lender. . . . MERS' interest in the mortgage did not give it an interest in the debt.

2011 WL 1516819, *4 (emphasis in original).  Because the statute did not otherwise authorize MERS to foreclose by advertisement, the court vacated the

foreclosure proceedings.  *See id.* at 9.

Defendants argue that nothing in *Saurman* affects the outcome of this case because MERS was not the foreclosing party.  Rather, it is undisputed that the servicer of the loan initiated the foreclosure.  According to plaintiff, *Saurman* also speaks to the ability of defendants to transfer plaintiffs' loan countless times without having to record the mortgage transfer.  This may be true, but plaintiffs fail to identify any legal authority that this practice in Michigan is impermissible or somehow invalidates the foreclosure proceeding under Michigan law.  *See e.g.*, *Williams v. U.S. Bank Nat. Ass'n*, 2011 WL 2293260, *1 (E.D. Mich. 2011) (*Saurman* held inapplicable where U.S. Bank, not MERS, initiated the foreclosure by advertisement and the court concluded that plaintiffs lacked standing to challenge the assignment from MERS to U.S. Bank.); *Knox v. Trott & Trott*, 2011 WL 2413449 (E.D. Mich. 2011); *Carl v. BAC Home Loans Servicing*, 2011 WL 3203086 (E.D. Mich. 2011).

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that defendants' motions to dismiss be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  August 5, 2011                                s/Michael Hluchaniuk
                                                     Michael Hluchaniuk
                                                     United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 5, 2011 , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>Angela K. Howell and Michelle T. Thomas</u>.

<u>s/Tammy Hallwood</u>
Case Manager
(810) 341-7887
tammy_hallwood@mied.uscourts.gov
